Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Tel: (805) 750-8852
Email: bsegee@biologicaldiversity.org
*Pro Hac Vice Application Pending*

Marc Fink (Minn. Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, MN 55805
Tel: (218) 464-0539
Email: mfink@biologicaldiversity.org
*Pro Hac Vice Application Pending*

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, a non-profit organization; and Maricopa Audubon Society, a non-profit organization, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Forest Service; and U.S. Fish and Wildlife Service, <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.      Plaintiffs Center for Biological Diversity ("Center") and Maricopa Audubon Society bring this action against the U.S. Forest Service ("Forest Service") and U.S. Fish and Wildlife Service ("FWS") for violations of the Endangered Species Act ("ESA") arising from Forest Service final agency actions authorizing domestic livestock grazing on 18 public lands allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests in Arizona, including the issuance of term grazing permits, allotment management plans ("AMPs"), and allotment annual operating instructions ("AOIs"), as well as the Forest Service's failure to act to prevent unlawful livestock grazing on an additional 4 allotments that have been purportedly closed to grazing.

2.      The Verde River is home to numerous ESA-listed species dependent on aquatic and riparian habitat, including yellow-billed cuckoo, Gila chub, and Southwestern willow flycatcher. In carrying out their consultation duties pursuant to section 7 of the ESA for the 18 individual grazing allotment authorizations challenged in this action, the Forest Service and FWS have determined that the effects of domestic livestock grazing are not likely to adversely impact these species or adversely modify their designated critical habitat. These determinations are primarily based on commitments to exclude streamside habitat from cattle and to conduct regular monitoring of riparian areas in order to ensure that the fencing exclusions remain intact and effective.

3.      In 2019, the Center conducted intensive surveys of cattle impacts in riparian habitats for threatened and endangered species on National Forest grazing allotments within the Verde River watershed. Contrary to the commitments made by the Forest Service and FWS through the ESA section 7 process, these surveys documented widespread cattle grazing occupancy and damage, and damaged or nonexistent exclusion fencing, in dozens of locations inspected across the study area. The Center compiled the findings of these surveys into a comprehensive report and provided that report to the Forest Service and FWS in January 2020. In June 2020, the Center conducted follow-up

surveys to verify whether the Forest Service had remedied the unlawful grazing. In nearly every area surveyed, unauthorized grazing continues. The results of these surveys were also provided to the Forest Service.

4.     The ESA places ongoing obligations on federal agencies to ensure that their actions do not jeopardize the continued existence of endangered species or adversely modify or destroy their designated critical habitat, including the duty to reinitiate section 7 consultations in four circumstances. 50 C.F.R. § 402.16(a)(1)-(4). Agencies must reinitiate and complete consultation, for example, "[i]f the amount or extent of taking specified in the incidental take statement is exceeded," when "[n]ew information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered," or when "[t]he identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." *Id*. § 402.16(a)(1)-(3).

5.     The Forest Service and FWS were required to reinitiate and complete consultation when presented with evidence documenting extensive cattle use and damaged or absent fencing exclusions on grazing allotments within the riparian streamside areas of 22 specific allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests. 18 of these allotments are permitted and 4 of these allotments are classified as vacant. The Forest Service's failure to exclude domestic livestock from occupied threatened and endangered species habitat, and designated critical habitat, or to take immediate corrective action to remedy these failures, undermines the Forest Service's and FWS' conclusions regarding the impact of those specific grazing allotment authorizations on listed species and their designated critical habitat, and triggers the specific reinitiation thresholds at 50 C.F.R. § 402.16(a).

6.     In addition, the Forest Service and FWS were required to reinitiate and complete consultation due to the listing and designation of critical habitat for threatened or endangered species subsequent to the most recent section 7 consultations for the Verde River allotments. Only one of these consultations was conducted during the past five

years, and several were conducted two decades or more ago. Since that time, FWS has listed several additional riparian-dependent species within the Verde River watershed as threatened or endangered with extinction, including yellow-billed cuckoo, Gila chub, narrow-headed and northern Mexican garter snakes, and Chiricahua leopard frog. These new listings, and associated proposed and final critical habitat designations, also trigger the reinitiation thresholds.

7.      On March 5, 2020, Plaintiffs provided 60 days' Notice of its Intent ("NOI") to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), with respect to the 22 Verde River watershed grazing allotments on the Prescott, Coconino, and Tonto National Forests. This detailed NOI contained much of the raw data underlying the surveys, including hundreds of photographic reference points.

8.      On May 19, 2020, the Forest Service Southwestern Regional Forester responded to Plaintiffs' NOI. The response denies the findings of the Center's survey, stating that "[w]e did not identify any allotments that have compliance issues associated with existing consultation documents." FWS did not respond to the NOI. The agencies' responses therefore do not resolve the ESA violations alleged in Plaintiff's NOI. Accordingly, Plaintiffs seek declaratory and injunctive relief to enforce the agencies' mandatory ESA's requirements with respect to the 22 Verde River allotments described in this Complaint and listed in Table 1.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c),(g) (action arising under ESA citizen suit provision); 5 U.S.C. §§ 701-706 (APA review of agency action and failure to act); and 28 U.S.C. § 1331 (federal question jurisdiction).

10.      The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. § 706(2); and 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief).

11.     Plaintiffs provided sixty (60) days' NOI to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), by letter to the Forest Service and FWS dated March 5, 2020. Defendants have not taken action to remedy their continuing ESA violations by the date of this complaint's filing. Therefore, an actual controversy exists between the parties under 28 U.S.C. § 2201.

12.     Venue is proper in the United States District Court for the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the Center's claims occurred in Yavapai, Maricopa, and Gila Counties, which are within this District.

## PARTIES

13.   Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit environmental organization dedicated to the protection of endangered species and wild places through science, policy, and environmental law. The Center is headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 80,000 members.

14.   Plaintiff MARICOPA AUDUBON SOCIETY is a nonprofit organization with more than 3,000 members dedicated to the study and enjoyment of birds and other wildlife, and to the protection and restoration of habitat in the Southwest. Maricopa Audubon Society is run by volunteers and strives to protect and restore wildlife habitat through education and community involvement.

15.   Plaintiffs bring this action on their own behalf, and on behalf of their staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from the federal public lands where the grazing allotments are located.

16.   Plaintiffs and their members have protectable interests in the conservation of the ESA-listed species and their streamside riparian and aquatic habitats found within the Verde River watershed and the specific allotments at issue in this case, and in the full and effective implementation of the Endangered Species Act. Plaintiffs seek to observe or

study these ESA-listed species within their natural habitats, without the degradation or destruction of that habitat resulting from unlawful or unauthorized livestock grazing.

17.    Plaintiffs' members include individuals who regularly visit specific areas of the Prescott, Coconino, and Tonto National Forests within the Verde River watershed that are directly within, or impacted by, the specific grazing allotments at issue in this case. Plaintiffs' members' use includes portions of the Verde River and Fossil Creek protected under the Wild and Scenic Rivers Act—the only waterways protected by the Act within the state of Arizona. Plaintiffs' members use also includes areas within the Verde River watershed protected by the Wilderness Act that are impacted by the unauthorized grazing, including the Fossil Springs, Mazatzal, Wet Beaver, Cedar Bench, and Pine Mountain Wilderness areas.

18.    Plaintiffs' members can demonstrate consistent and longstanding use and enjoyment of the rivers and streams being degraded by unauthorized riparian grazing, including the Verde River, East Verde River, Wet Beaver Creek, Fossil Creek, Red Creek, Red Tank Draw, Walker Creek, Houston Creek, Tangle Creek, and Sycamore Creek, as well as areas within those rivers' larger watersheds that are impacted by unlawful grazing. Plaintiffs have members who have concrete plans to return to these areas during the next year, including the upcoming fall and winter.

19.    Plaintiffs' members and staff derive ecological, recreational, scientific, educational, aesthetic, spiritual and other benefits from their use of the specific areas of the Verde watershed within the Prescott, Coconino, and Tonto National Forests described above. These interests of Plaintiffs' members, have been, are being, and will continue to be adversely harmed by the Forest Service's and FWS' failure to meet their procedural and substantive duties under section 7 of the ESA. Through the Forest Service's and FWS' actions and failures to act, domestic livestock are accessing streamside riparian areas, resulting in streambank trampling, soil compaction, removal of riparian vegetation, and deposition of cattle feces, resulting in water quality degradation, dewatering of streams, habitat destruction, and related adverse impacts to endangered species and other

natural resource values, which in turn significantly and directly harms Plaintiffs' members. The injuries described are actual, concrete injuries presently suffered by Plaintiffs and their members, and they will continue to occur unless this Court grants relief. The relief sought herein—including an Order compelling the Forest Service and FWS to reinitiate and complete section 7 consultations for the challenged actions while taking immediate corrective actions to effectively exclude cattle from streamside and riparian areas and remedy the damage caused by those cattle—would redress those harms. Plaintiffs and their members have no other adequate remedy at law.

20.     Defendant UNITED STATES FOREST SERVICE is an agency within the Department of Agriculture, and has issued grazing authorizations including term grazing permits, AMPs, and AOIs. Like all federal agencies, the Forest Service must comply with all applicable requirements of the ESA, including the ongoing duty to comply with ESA section 7 requirements in relation to those authorizations.

21.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA, and shares responsibility with the Forest Service for reinitiation and completion of consultation under section 7 in relation to the grazing authorizations.

**LEGAL BACKGROUND**

22.     The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

23.     To achieve these objectives, the ESA directs the Secretary of the Interior, through FWS, to determine which species of plants and animals are "threatened" and "endangered" and place them on the list of protected species. *Id.* § 1533. An

1  "endangered" or "threatened" species is one "in danger of extinction throughout all or a

2  significant portion of its range," or "likely to become endangered in the near future

3  throughout all or a significant portion of its range," respectively. *Id*. § 1532(6), (20).

4      24.    Once a species is listed, the ESA provides procedural and substantive

5  protections to ensure the species' continued survival, and its ultimate recovery, including

6  the designation of critical habitat, the preparation and implementation of recovery plans,

7  the prohibition against the "taking" of listed species, and the requirement for interagency

8  consultation. *Id*. §§ 1533(a)(3), 1533(f), 1536, 1538.

9      25.    Section 7(a)(1) of the ESA requires each federal agency, in consultation

10  with FWS, to carry out programs for the conservation of threatened and endangered

11  species. 16 U.S.C. § 1536(a)(1). The ESA defines "conserve" and "conservation" to

12  mean "the use of all methods and procedures which are necessary to bring any

13  endangered species or threatened species to the point at which the measure provided

14  pursuant to this chapter are no longer necessary." 16 U.S.C. § 1532(3).

15      26.    Section 7(a)(2) of the ESA requires that "[e]ach Federal agency shall, in

16  consultation with . . . [FWS], [e]nsure that any action authorized, funded, or carried out

17  by such agency . . . is not likely to jeopardize the continued existence of any endangered

18  species or threatened species or result in the destruction or adverse modification of

19  [critical habitat]." *Id.* § 1536(a)(2). This section 7(a)(2) consultation process has been

20  described as the "heart of the ESA." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d

21  472, 495 (9th Cir. 2011).

22      27.    FWS' regulations define an agency "action" to mean "all activities or

23  programs of any kind authorized, funded, or carried out, in whole or in part, by Federal

24  agencies." 50 C.F.R. § 402.02.

25      28.    If listed or proposed species may be present in the project area, the action

26  agency must prepare a "biological assessment" to determine whether the listed species

27  may be affected by the proposed action. 50 C.F.R. § 402.12.

28      29.    If the action agency determines that its proposed action may affect any

listed species or critical habitat, the agency must normally engage in "formal consultation" with FWS. *Id.* § 402.14. However, the agency need not initiate formal consultation if, as a result of the preparation of a biological assessment or as a result of informal consultation with FWS, the agency determines, with the written concurrence of FWS, that the proposed action is not likely to adversely affect any listed species or critical habitat. *Id.* §§ 402.13, 402.14(b)(1).

30.     Through the formal section 7 consultation process, FWS prepares a "biological opinion" as to whether the action is likely to jeopardize the species or destroy or adversely modify critical habitat and, if so, suggests "reasonable and prudent alternatives" to avoid that result. *Id.* § 402.14; 16 U.S.C. § 1536(b)(3)(A). If the biological opinion concludes that the action is not likely to jeopardize the continued existence of a listed species, and will not result in the destruction or adverse modification of critical habitat, FWS must provide an "incidental take statement," specifying the amount or extent of such incidental taking on the species and any "reasonable and prudent measures" that FWS considers necessary or appropriate to minimize such impact, and setting forth the "terms and conditions" that must be complied with by the action agency to implement those measures. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i).

31.     Agencies must reinitiate consultation on agency actions over which the action agency retains, or is authorized to exercise, discretionary involvement or control, if: (1) the amount or extent of taking specified in the incidental take statement is exceeded; (2) new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (3) the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or (4) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16(a)(1)-(4).

32.     After the initiation or reinitiation of section 7 consultation, the action agency is prohibited from making "any irreversible or irretrievable commitment of

resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2)." 16 U.S.C. § 1536(d).

33.     During the consultation process, federal agencies must "use the best scientific and commercial data available." *Id*. § 1536(a)(2); 50 CFR § 402.14(d).

## BACKGROUND

### A.     The Verde River Watershed

34.     A major tributary of the Colorado River basin, the Verde River spans a 192-mile length through Arizona's center, eventually joining the Salt River north of Mesa. The Verde River provides water for millions of Arizonans, including all of the domestic water for communities and rural households from the Prescott Valley through the Verde Valley, and supplies approximately 40 percent of the surface water that the Salt River Project delivers to Phoenix-area residents for municipal and agricultural use.

35.     Federal lands comprise slightly less than two-thirds (≈ 62%) of the Verde River watershed. The majority of this federal public land is managed by the Forest Service, as parts of the Prescott, Coconino, Tonto, and Kaibab National Forests, and includes several designated Wilderness areas, inventoried roadless areas, and the only two Wild and Scenic River segments in the state of Arizona.

36.     The Verde River is a critical flyway for migratory birds, home to desert nesting bald eagles, and harbors one of the largest remaining native fish assemblages in Arizona. The Verde and its tributaries and wetlands are occupied by numerous ESA-listed threatened or endangered species which depend upon healthy and functioning streamside riparian and aquatic habitat, including: yellow-billed cuckoo, southwestern willow flycatcher, Mexican spotted owl, Chiricahua leopard frog, narrow-headed and northern Mexican garter snakes, Gila chub, razorback sucker, Gila topminnow, desert pupfish, spikedace, and loach minnow.

### B.      Public Lands Grazing is a Primary Threat to Endangered Species Dependent on Southwestern Streams

37.      Scientific study on the impacts of livestock grazing on aquatic and riparian habitats in the Southwest is extensive and universally shows severe and lasting negative impacts such that complete exclusion of cattle is widely accepted as a minimum baseline management strategy in preserving stream health. Livestock grazing has both direct and indirect effects on streams, and is a leading cause of species endangerment in the Southwest, including many of the ESA-listed species within the Verde River watershed.

38.      Livestock directly affects riparian habitat through removal of riparian vegetation. Loss of riparian vegetation in turn raises water temperatures, reduces bank stability, and eliminates an important structural component of the stream environment that contributes to the formation of pools.

39.      Grazing physically alters streambanks through trampling and shearing, leading to bank erosion. In combination, loss of riparian vegetation and bank erosion can alter channel morphology, resulting in downcutting and an increased width/depth ratio, all of which lead to a loss of pool habitats and shallow side and backwater habitats used by several of the listed species that are the subject of this lawsuit.

40.      Livestock also indirectly impact aquatic and riparian habitats by compacting soils, altering soil chemistry, and reducing vegetation cover in upland areas, leading to increased severity of floods and sediment loading, lower water tables, and altered channel morphology.

41.      One consequence of these impacts to watersheds is a reduction in the quantity and quality of pool habitat. A lowered water table, for example, results in direct loss of pool habitats, simply because water is not available to form pools. Increased erosion results in filling of pools with sediments. Channel incision and increased flood severity both can scour out pools, reducing habitat complexity and resulting in shallow, uniform streambeds, all of which harms the species at issue in this suit.

1
2
3

    C.    **The Forest Service and FWS Rely Upon Riparian Exclusions as a Primary Basis for Endangered Species Act Compliance on Verde River Allotments**

4
5
6
7
8

    42.    The Forest Service has recognized the negative impacts of livestock grazing on the riparian resources of the Verde River watershed for decades. In 1979, for example, the Prescott, Coconino, and Tonto National Forests issued an "Action Program for Resolution of Livestock-Riparian Conflicts on the Salt River and Verde River," which noted the "severe deterioration" of the riparian plant communities from livestock grazing.

9
10
11
12

    43.    Nonetheless, prior to the late 1990s, the Forest Service routinely authorized cattle grazing on Southwestern streams and riparian areas despite the mounting evidence of its devastating impacts on those areas and the imperiled species that depend upon them.

13
14
15
16
17

    44.    In *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, the Center in 1997 sued the Forest for its failure to fulfill its Endangered Species Act section 7 consultation duties with respect to the impacts of 158 grazing allotments on southwestern willow flycatcher, loach minnow, and spikedace, including numerous allotments within the Verde River watershed. No. CV-97-666-TUC-JMR (D. Ariz. Oct. 23, 1997).

18
19
20
21

    45.    Under a resultant April 1998 settlement agreement, the Forest Service agreed to immediately remove cattle from ninety-nine percent of riparian habitats within the allotments at issue until FWS issued a biological opinion pursuant to section 7 of the ESA.

22
23
24
25
26
27
28

    46.    These obligations catalyzed the Forest Service, in cooperation with FWS, to develop a grazing consultation team, comprised of a leader, representative biologists, and rangeland specialists from the Forest Service, with biologists and other advisors from FWS. This interagency team developed "Grazing Guidance Criteria," to guide ESA section 7 consultations regarding grazing and to apply those criteria to all 962 grazing allotments within USFS Region 3 (Southwestern Region.). *See Sw. Ctr. for Biological*

*Diversity v. U.S. Forest Serv.*, Nos. CV-97-666-TUC-JMR, CV-97-2562-PHX-SMM, 2001 U.S. Dist. LEXIS 25027, *6-8 (D. Ariz. Mar. 30, 2001).

47.     Since that time, grazing exclusions, as well as annual monitoring to ensure the effectiveness of those exclusions, have served as a cornerstone for ESA compliance in relation to the Forest Service's decisions authorizing grazing on individual grazing allotments.

48.     Today, the Forest Service and FWS continue to utilize an iteration of the Grazing Criteria, now called the "Master Framework for Streamlining Consultation on Livestock Grazing Activities" (December 2015) (hereinafter referred to as "Grazing Criteria"). The Grazing Criteria provides that the Forest Service and FWS can only determine that livestock grazing is not likely to adversely affect the aquatic and riparian dependent threatened and endangered species in the Verde River watershed, or destroy or adversely modify their designated critical habitat, through robust protection of streamside riparian habitats, typically achieved through year-long exclusion of cattle.

49.     These riparian exclusions are only one component of the agencies' not likely to adversely affect determination under section 7 of the ESA. The Forest Service must also meet specific standards with respect to grazing in adjacent upland areas.

50.     In order to make a "not likely to adversely affect" finding for ESA-listed fish within the Verde River watershed including Gila chub, loach minnow, spikedace, razorback sucker, Gila topminnow, and desert pupfish, the Grazing Criteria requires the Forest Service to ensure that "[d]irect effects to listed species will be avoided by yearlong exclusion of livestock from occupied … habitats in the action area," as well as a determination that impacts from upland livestock grazing "are determined to be insignificant or discountable as measured through quantitative or qualitative measures such as watershed health and condition, use levels, or sedimentation in critical habitat." (p. 80).

51.     In order to make a "not likely to adversely affect" finding for ESA-listed birds within the Verde River watershed including Southwestern willow flycatcher and

yellow-billed cuckoo, the Grazing Criteria requires the Forest Service to ensure that grazing activities "do not measurably or detectably reduce the suitability or regeneration" of riparian streamside habitat, as well as making a required determination that potential indirect effects are "insignificant or discountable." (p. 31, 34).

52.    In order to make a "not likely to adversely affect" finding for narrow-headed and northern Mexican garter snake, the Grazing Criteria requires the Forest Service to ensure that there "will be no livestock use or livestock management activities where the species is reasonably certain to occur or where there is occupied habitat," as well as determinations that the impacts from upland livestock grazing are "insignificant or discountable," with "particular attention given to potential impacts to native fish," and that proposed livestock management activities "will not increase the likelihood that bullfrogs, non-native, spiny-rayed fish, brown trout, or crayfish will colonize, be introduced, or improve their status." (p. 127, 132).

53.    18 of the 22 Verde River watershed allotments at issue in this suit have most recently been considered in six separate Biological Opinions prepared by FWS. The remaining 4 allotments are considered vacant by the Forest Service. In accordance with the Grazing Criteria and substantive ESA obligations to avoid jeopardizing the continued existence of listed species, or destroy or adversely modify designated critical habitat, these consultations have relied upon Forest Service commitments to exclude livestock from riparian areas, ensured through consistent Forest Service monitoring, to justify conclusions of no effect or not likely to adversely affect determinations in relation to aquatic or riparian dependent endangered species.

**D.    The Center Documented Widespread and Significant Riparian Damage on Grazing Allotments within the Verde River Watershed**

54.    Plaintiff Center for Biological Diversity conducted on-the-ground assessments in 2019 to determine if cattle are present within Verde River watershed riparian areas that are purportedly excluded from cattle on 23 public lands grazing

allotments in the Prescott, Coconino, and Tonto National Forests. In total, the Center surveyed riparian areas along 143.2 stream miles on the Verde and East Verde Rivers and portions of major tributaries including Wet Beaver Creek, Fossil Creek, Walker Creek, Houston Creek, Red Tank Draw, Tangle Creek, and Red Creek. Observations of cattle impacts were collected for 350 distinct riparian segments, each generally ¼ to a mile in length, and averaging 0.41 miles long.

55.     In conducting the assessments, field surveyors recorded livestock grazing impacts to riparian vegetation, soils, and streambanks, and documented the condition of exclosure fencing. Data were collected in six categories and were scored based on the severity and frequency of impacts. Stream reaches were ranked with absent, light, moderate, or significant grazing impacts. All data is supported by more than 1,700 georeferenced photographs documenting livestock presence and their impacts.

56.     These assessments documented that the purported fencing exclusions were frequently in disrepair or simply nonexistent, resulting in widespread unauthorized cattle presence with associated damage to riparian areas and occupied or suitable endangered species habitat. Approximately 44% of stream miles were ranked with moderate to significant impacts (62.6 miles), while only 30% of stream miles were absent of cattle impacts (42.9 miles).

57.     In numerous instances, surveyors observed cattle directly present in riparian and streamside areas. In addition to branded cattle associated with the permitted allotments, surveyors also observed "feral" or unbranded cattle (*i.e.*, not showing evidence of human ownership) on 18 permitted allotments, as well as on 4 purportedly vacant allotments.

58.     The Center compiled these survey results into a detailed report in January 2020 and provided this report to the Forest Service. The Forest Service has not taken adequate corrective action in response.

59.     In June 2020, the Center conducted a follow-up spot survey on several allotments surveyed in 2019, documenting continued extensive damage and recent cattle

impacts on those allotments. The Center provided the results of this June 2020 survey to the Forest Service on August 4, 2020.

        **E.**      **Verde River Grazing Allotments: Specific Allegations**

      60.      On December 30, 2002, FWS issued a Biological Opinion for the Forest Service's authorization of grazing on 16 allotments in the Verde River watershed on the Prescott National Forest, including the **Muldoon**, **West Bear**, **China Dam**, **Sand Flat**, **Perkinsville**, **Horseshoe**, and **Antelope Hills** allotments on the upper Verde River within Chino Valley Ranger District, and the **Brown Springs** allotment on the Verde Ranger District.

      61.      The December 30, 2002 Biological Opinion considered the impacts of grazing on the loach minnow and spikedace, and their designated critical habitat. The Biological Opinion states that "spikedace are potentially occupying the upper Verde River complex" and that the Verde River is "likely occupied by spikedace" in the Muldoon, China Dam, Sand Flat, Horseshoe, Antelope Hills, and Perkinsville allotments." (p. 48). Although loach minnows are considered extirpated from the entire Verde River system, FWS noted a "promising prospect of future reintroduction efforts" for both loach minnow and spikedace in unoccupied stream reaches throughout the watershed.

      62.      The December 20, 2002 Biological Opinion concludes that grazing in the upper Verde allotments is not likely to jeopardize the continued existence of the spikedace or loach minnow, or result in the destruction or adverse modification of their designated critical habitat, based on the installation of fencing around riparian areas, and monitoring regimes.

      63.      With respect to the seven upper Verde allotments, the December 30, 2002 Biological Opinion states that 3.6 miles of the Verde River within the Muldoon Allotment, 9.7 miles of the Verde River within the West Bear Allotment, 3 miles of the Verde River within the China Dam Allotment, 1.7 miles of the Verde River within the Sand Flat Allotment, 1.6 miles of the Verde River within the Perkinsville Allotment, 3.4

miles of the Verde River within the Horseshoe Allotment, and 14.6 miles of the Verde River within the Antelope Allotment is excluded from livestock use and regularly monitored for unauthorized cattle.

64.     The Center's 2019 surveys documented cattle impacts all along the purportedly excluded Upper Verde River corridor within all of these allotments, including 3.72 miles on the Muldoon allotment (NOI, p. 15-19), 8.84 miles on the West Bear allotment (NOI, p. 20-31), 3.08 miles on the China Dam allotment (NOI, p. 31-47), 1.77 miles on the Sand Flat allotment (NOI, p. 38-47), 1.33 miles on the Perkinsville allotment (NOI, p. 48-55), 3.46 miles on the Horseshoe allotment (NOI, p. 55-69), and 9.21 miles on the Antelope Hills allotment (NOI, p. 70-85).

65.     These findings contradict the Forest Service's commitment in the December 30, 2002 Biological Opinion to exclude cows from the Verde River on the Muldoon, West Bear, China Dam, Sand Flat, Perkinsville, Horseshoe, and Antelope Hills allotments, and demonstrate that the Forest Service has not been conducting required monitoring or taken required corrective action to remove unauthorized cattle from purportedly excluded riparian areas.

66.     With respect to the Verde District allotment, the December 30, 2002 Biological Opinion states that the Brown Springs allotment contains 12 miles of the Verde River, and that portions of the River are accessible to grazing through two "water gap" access points.

67.     The Center's 2019 surveys documented cattle impacts on 8.62 miles of the purportedly excluded Verde River corridor within the Brown Springs allotment (at its border with the 13-Mile Rock and Hackberry/Pivot Rock allotment) (NOI, p. 120-153).

68.     These findings contradict the Forest Service's commitment to exclude cows from the Verde River on the Brown Springs allotment and demonstrate that the Forest Service has not been conducting required monitoring or taken required corrective action to remove unauthorized cattle from purportedly excluded riparian areas.

69.     In addition to this new information showing that the Verde River grazing exclusions are not being maintained or monitored, the December 30, 2002 Biological Opinion does not address several subsequently listed species and critical habitats that may be affected by the grazing authorizations, including razorback sucker, Southwestern willow flycatcher, yellow-billed cuckoo, and narrow-headed and northern Mexican garter snakes.

70.     On August 14, 2014, FWS issued a Biological Opinion for the Forest Service's authorization of grazing on the **Windmill West** allotment on the Coconino National Forest. In that Biological Opinion, FWS concurred with Forest Service determinations that grazing was not likely to adversely affect ESA-listed riparian and aquatic species including southwestern willow flycatcher, yellow-billed cuckoo, loach minnow, spikedace, razorback sucker, and Gila topminnow, based on the Forest Service's commitment to exclude cattle from the Verde River and Oak Creek.

71.     The Center's 2019 surveys documented cattle impacts on 1.30 miles of the purportedly excluded Verde River corridor within the Windmill West allotment (at its border with the Antelope Hills allotment) (NOI, p. 86-93).

72.     These findings contradict the Forest Service's commitment to exclude cows from the Verde River on the Windmill West allotment and demonstrate that the Forest Service has not been conducting required monitoring or taken required corrective action to remove unauthorized cattle from purportedly excluded riparian areas.

73.     On May 6, 2016, FWS issued a Biological Opinion for the Forest Service's authorization of grazing on eight allotments on the Coconino National Forest including the **Apache Maid**, **Beaver Creek**, **Walker Basin**, **13-Mile Rock**, **Fossil Creek**, and **Hackberry/Pivot Rock allotments**. The May 6, 2016 Biological Opinion considered the impacts of grazing authorizations on yellow-billed cuckoo, narrow-headed and northern Mexican garter snakes, and Gila chub.

74.     In the May 6, 2016 Biological Opinion, FWS agreed with the Forest Service's determination that only two of the allotments—Apache Maid and Beaver

Creek—had potential for adverse impacts to listed species or critical habitat. FWS also concurred with "no effect" or "not likely to adversely affect" determinations on the Walker Basin, 13-Mile Rock, Fossil Creek, and Hackberry/Pivot Rock allotments.

75.     The FWS concurrences in the May 6, 2016 Biological Opinion are all based on the Forest Service commitment to exclude livestock from the Verde River, as well as tributary streams including Walker Creek, Red Tank Creek, and Wet Beaver Creek. These three tributaries contain occupied habitat for Gila chub and yellow-billed cuckoos.

76.     The Center's 2019 surveys documented cattle impacts on more than 1.60 miles of the purportedly excluded Red Tank Draw within the Apache Maid allotment (NOI, p. 91-100), 1.50 miles of the purportedly excluded Walker Creek within the Walker Basin allotment (NOI, p. 112-120), nearly 2 miles of the purportedly excluded Wet Beaver Creek and more than 2.6 miles of the purportedly excluded Red Tank Draw within the Beaver Creek allotment (NOI p. 100-111), approximately 8.5 miles of the purportedly excluded Verde River within the 13-Mile Rock allotment (at its boundary with the Brown Springs and Hackberry/Pivot Rock allotments) (NOI, p. 120-153), and 2.6 miles of the purportedly excluded Verde River within the Fossil Springs allotment (at its border with the Skeleton Ridge allotment) (NOI, p. 159-182 and p. 230-246).

77.     These findings contradict the Forest Service's commitment to exclude cows from the Verde River and its tributaries on the Apache Maid, Beaver Creek, Walker Basin, 13-Mile Rock, Fossil Creek, and Hackberry/Pivot Mountain allotments in the May 6, 2016 Biological Opinion, and demonstrate that the Forest Service has not been conducting required monitoring or taken required corrective action to remove unauthorized cattle from purportedly excluded riparian areas.

78.     On September 8, 1995, FWS issued a Biological Opinion for the Forest Service's authorization of grazing on allotments including the **Cedar Bench allotment** on the Tonto National Forest. Cedar Bench contains portions of the wild and scenic Verde River and the southern portion of the allotment lies within the Mazatzal Wilderness.

79.     The Cedar Beach allotment contains portions of the Verde River, East Verde River, and Fossil Creek. The September 8, 1995 Biological Opinion anticipated that grazing of the Verde River would take place from mid-November to mid-March every other year, and notes that livestock is able to access all three waters, but requires the Forest Service to monitor riparian use and restrict such use where livestock is causing damage.

80.     The Center's 2019 surveys documented some of the most intensive damage of all allotments on the Cedar Bench allotment. In all segments surveyed, the cattle impacts were categorized as significant, including 3.74 miles of the Verde River, and 5.96 miles of the East Verde River (NOI, p. 247-308). An additional 7.90 miles of significant cattle impacts were noted on the East Verde River in the adjacent Bull Springs allotment, which is administratively closed to grazing and contained entirely within the Mazatzal Wilderness (NOI, p. 318-364).

81.     These findings demonstrate that the Forest Service has not been conducting required monitoring on the Cedar Bench allotment or taken required corrective action to exclude cattle from riparian areas as required by the September 8, 1995 Biological Opinion.

82.     In addition to this new information showing that purported riparian grazing exclusions on the Cedar Bench allotment are not being maintained or monitored, the September 8, 1995 Biological Opinion does not address several subsequently listed species and critical habitats that may be affected by the grazing authorizations, including loach minnow, spikedace, yellow-billed cuckoo, southwestern willow flycatcher, Gila chub, and narrow-headed and northern Mexican garter snakes.

83.     On June 25, 1997, FWS issued a Biological Opinion for the Forest Service's authorization of grazing on allotments including the **Skeleton Ridge allotment** on the Tonto National Forest. Skeleton Ridge, which now also includes the former Ike's Backbone allotment, contains approximately 20 miles of the wild and scenic Verde River

1   and much of the southern portion of the allotment lies within the Mazatzal Wilderness,

2   while western portions of the allotment lie within Pine Mountain Wilderness.

3         84.    The Skeleton Ridge allotment contains portions of the Verde River,

4   Houston Creek, and Fossil Creek. The June 25, 1997 Biological Opinion, addressing

5   impacts to razorback sucker and southwestern willow flycatcher, anticipated that

6   approximately 7 miles of river would be accessible to livestock, but requires the Forest

7   Service to monitor riparian use and restrict such use where livestock is causing damage.

8         85.    The Center's 2019 surveys documented some of the most intensive damage

9   of all allotments on the Skeleton Ridge allotment. Cattle impacts were categorized as

10   significant on more than 10.5 miles of the Verde River, 2.1 miles of Fossil Creek (at the

11   border with Deadman Mesa allotment), and nearly 0.4 miles of moderate impacts at

12   Houston Creek (NOI, p. 159-299).

13         86.    These findings demonstrate that the Forest Service has not been conducting

14   required monitoring on the Skeleton Ridge allotment, or taken required corrective action

15   as required by the June 25, 1997 Biological Opinion.

16         87.    In addition to this new information showing that purported riparian

17   exclusions on the Skeleton Ridge allotment are not being maintained or monitored, the

18   June 25, 1997 Biological Opinion does not address several subsequently listed species

19   and critical habitats that may be affected by the grazing authorizations, including loach

20   minnow, spikedace, yellow-billed cuckoo, southwestern willow flycatcher, Gila chub,

21   and narrow-headed and northern Mexican garter snakes.

22         88.    On December 19, 2000, FWS issued a Biological Opinion for the Forest

23   Service's authorization of grazing on the **Red Creek allotment** on the Tonto National

24   Forest. Red Creek contains the southernmost portion of the wild and scenic Verde River

25   and much of the eastern portion of the allotment lies within the Mazatzal Wilderness,

26   while the northwestern portion is within Pine Mountain Wilderness.

27         89.    The Red Creek allotment contains 14 miles of the Verde River, as well as

28   an additional 5 miles of perennial waters on Red Creek and Tangle Creek. The December

19, 2000 Biological Opinion, addressing impacts to razorback sucker and southwestern willow flycatcher, stated that no grazing would occur along the Verde River, and that portions of Red Creek and Tangle Creek would also be excluded from grazing.

90.     The Center's 2019 surveys documented more than 5 miles of significant cattle impacts on Red Creek and 1.2 miles of significant cattle impacts on Tangle Creek within the Red Creek allotment. (p. 365-496).

91.     These findings contradict the Forest Service's commitment in the December 19, 2000 Biological Opinion to exclude cows from Red Creek and Tangle Creek within the Red Creek allotment and demonstrate that the Forest Service has not been conducting required monitoring or taken required corrective action to remove unauthorized cattle from purportedly excluded riparian areas.

92.     In addition to this new information showing that the grazing exclusions are not being maintained or monitored, the December 19, 2000 Biological Opinion does not address several subsequently listed species and critical habitats that may be affected by the grazing authorizations, including loach minnow, spikedace, yellow-billed cuckoo, southwestern willow flycatcher, Gila chub, and narrow-headed and northern Mexican garter snakes.

93.     The Center's 2019 surveys documented cattle impacts on three allotments which are officially considered vacant by the Forest Service, including 7.90 miles of significant impacts on the purportedly excluded Verde River on the **Bull Springs allotment** (NOI, p. 318-364), 2.5 miles of significant or moderate impacts on the purportedly excluded Fossil Creek within the **Deadman Mesa allotment** (at its border with the Skeleton Ridge allotment) (NOI, p. 237-246), and approximately 4.3 miles of significant or moderate impacts on the purportedly excluded Verde River on the **Bartlett allotment** (NOI, p. 508-526). In addition, the Forest Service acknowledges that unauthorized cattle grazing occurs within riparian areas on the vacant **Sears Club/Chalk Mountain allotment**.

**F.      The Forest Service's May 19, 2020 NOI Response**

94.      The Forest Service's May 19, 2020 NOI response acknowledges that "there are areas within or adjacent to allotments along the [Verde] River where unauthorized livestock are utilizing riparian and aquatic habitat for listed species," but also claims that the agency "did not identify any allotments that have compliance issues associated with existing consultation documents."

95.      The NOI response further notes that the Prescott, Coconino, and Tonto National Forests "executed a contract to remove unauthorized and feral cattle from the Wild and Scenic portion of the Verde River to be completed during the Summer of 2020."

96.      Most of the allotments at issue in this suit are not within the Verde Wild and Scenic River corridor. Moreover, the Center conducted spot surveys this summer that continued to document widespread unauthorized grazing in riparian areas along the Verde River. Finally, the Forest Service has taken no action to mitigate the extensive damage to riparian habitat that has been caused by the unauthorized grazing. Accordingly, the actions taken pursuant to the removal contract relied upon in the NOI response have, at best, only addressed the unauthorized riparian grazing in a piecemeal, incomplete, and ineffective manner.

**CLAIMS FOR RELIEF**

**Claim I**
**Failure to Reinitiate and Complete ESA Section 7 Consultation to Ensure Ongoing Livestock Grazing Does Not Jeopardize Listed Species or Destroy or Adversely Modify Critical Habitat (ESA Violation of 16 U.S.C. § 1536(a)(2) and 50 C.F.R. § 402.16)**

97.      Plaintiffs incorporate all preceding paragraphs by reference.

98.      The Forest Service has authorized livestock grazing on 18 grazing allotments identified in the paragraphs above through final agency actions including the issuance of term grazing permits, allotment management plans ("AMPs"), and allotment annual operating instructions ("AOIs").

99.    The Biological Opinions prepared for the 18 permitted grazing allotments rely on excluding cattle from riparian areas, and Forest Service monitoring to confirm the ongoing effectiveness of those exclusions, as a primary means to ensure Endangered Species Act compliance in relation to ESA-listed riparian and aquatic dependent species within the Verde River watershed. The Biological Opinions did not consider impacts arising from unauthorized feral or unbranded cattle within the 18 allotments.

100.    Plaintiff Center for Biological Diversity conducted on-the-ground assessments in 2019 to determine if cattle are present within the riparian areas that are supposed to be excluded from cattle on the 18 permitted grazing allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests, and presented those assessments to the Forest Service and FWS in a January 2020 report. These assessments documented that purported fencing exclusions were frequently in disrepair or absent, resulting in widespread cattle presence and associated extensive damage to riparian areas providing habitat for ESA-listed species. The Center's surveys documented unauthorized grazing occurring by branded cattle, as well as feral or unbranded cattle, on the 18 permitted grazing allotments.

101.    The ESA places ongoing obligations on federal agencies to ensure that their actions do not jeopardize the continued existence of endangered species or adversely modify or destroy their designated critical habitat, including the duty to reinitiate section 7 consultation in four circumstances. 50 C.F.R. § 402.16(a)(1)-(4). Agencies must reinitiate consultation, for example,"[i]f the amount or extent of taking specified in the incidental take statement is exceeded," when "[n]ew information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered," or when "[t]he identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." *Id*. § 402.16(a)(1)-(3).

102.    The grazing assessment reports provided the Forest Service and FWS with documentation of extensively damaged, ineffective, or absent fencing and associated

riparian use and damage by branded, as well as feral and unbranded cattle on the 18 permitted grazing allotments. These findings contradict the requirements and commitments made in the relevant Biological Opinions, and/or exceed the levels of permissible incidental take established in those Biological Opinions, thus undermining the legality of section 7 consultation decisions authorizing grazing on the identified allotments, as all of these decisions relied upon the purported exclusion of cattle from southwestern rivers and streams as a foundation for those decisions.

103.    The Forest Service and FWS were required to reinitiate and complete consultation when presented with evidence documenting extensive cattle use and associated lack of Forest Service monitoring of the riparian streamside areas of specific allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests. The Forest Service's failure in fact to exclude domestic livestock, as well as unbranded or feral livestock, from occupied threatened and endangered species habitat specifically triggers the reinitiation thresholds at 50 C.F.R. § 402.16(a). By failing to reinitiate and complete consultation despite the fact that the reinitiation criteria are satisfied, the Forest Service and FWS are in violation of 50 C.F.R. § 402.16.

104.    By failing to take effective actions to exclude livestock from these allotments, the Forest Service is in ongoing violation of the substantive ESA section 7(a)(2) requirement that federal agencies ensure their actions are not likely to jeopardize the continued existence of any listed species or result in the destruction or adverse modification of designated critical habitat. 16 U.S.C. § 1536(a)(2).

105.    Plaintiffs and their members are injured by the Forest Service's and FWS' violations of ESA section 7(a)(2) and failure to reinitiate and complete consultation.

106.    The Forest Service's and FWS' violations of section 7(a)(2) of the ESA are subject to judicial review under the ESA citizen suit provision, 16 U.S.C. § 1540(g)(1), and/or the APA, 5 U.S.C. §§ 701-706.

**Claim II**
**Unlawful Irreversible or Irretrievable Commitment of Resources**
**Pending Completion of Consultation**
**(ESA Violation of 16 U.S.C. 1536(d))**

107.    Plaintiffs incorporate all preceding paragraphs by reference.

108.    The Forest Service's May 19, 2020 NOI response letter does not acknowledge that the reinitiation of ESA consultation is required for the 18 permitted Verde River allotments. Cattle continue to access purportedly excluded riparian areas, even though the Forest Service and FWS have determined that such exclusion is necessary to avoid jeopardizing listed species or the destruction or adverse modification of their designated critical habitat.

109.    ESA section 7(d) provides that once an agency initiates or reinitiates section 7 consultation, the agency "shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2)."  16 U.S.C. § 1536(d). The purpose of section 7(d) is to prevent harm to endangered species and designated critical habitat pending the completion of section 7 consultation.

110.    The Forest Service has failed to exclude cattle from riparian areas occupied by listed threatened or endangered species, and/or containing designated critical habitat for such species, within the 18 permitted grazing allotments pending the completion of reinitiated consultation, in violation of ESA section 7(d), 16 U.S.C. § 1536(d).

111.    Plaintiffs and their members are injured by the Forest Service's violations of ESA section 7(d).

112.    The Forest Service's violations of section 7(d) of the ESA are subject to judicial review under the ESA citizen suit provision, 16 U.S.C. § 1540(g)(1), and/or the APA, 5 U.S.C. §§ 701-706

**Claim III**
**Failure to Develop and Implement a Program to Conserve Listed Species Impacted by the Forest Service's Grazing Program and Unauthorized Grazing**
**(ESA Violation of 16 U.S.C. § 1536(a)(1))**

113.    Plaintiffs incorporate all preceding paragraphs by reference.

114.    The Forest Service has violated its affirmative obligation to "engage in consultation with the FWS" so as to "carry[] out programs for the conservation" of listed species impacted by its grazing program. 16 U.S.C. § 1536(a)(1). As detailed in this Complaint, permitted cattle, as well as feral or unbranded cattle, are routinely accessing streamside and riparian areas that are purportedly excluded from those livestock, causing widespread and significant damage to habitat occupied by endangered and threatened species, and/or their designated critical habitat.

115.    This damage is occurring in the 18 permitted allotments, as well as the 4 allotments that are formally designated as vacant. Unlike the 18 permitted allotments, the Forest Service and FWS have engaged in no consultation regarding the impacts of grazing on the purportedly vacant allotments. The Center's surveys demonstrated that these vacant allotments—which are concentrated along the Verde River Wild and Scenic corridor and contain significant portions of designated Wilderness—are subject to some of the most intensive and damaging unauthorized grazing within the Verde River watershed.

116.    The Forest Service's actions to remove unauthorized cattle from streamside and riparian areas on both the 18 permitted and 4 vacant allotments that are purportedly excluded from livestock have been, at best, ineffectual and temporary in nature. Fencing intended to exclude cattle is frequently absent, in disrepair, or otherwise ineffective. The Forest Service has not conducted required monitoring to ensure that cattle are in fact excluded from streamside and riparian areas, and has not implemented adequate enforcement actions to compel corrective action. The Forest Service's contracts to remove unauthorized permitted cattle, and feral or unbranded cattle, from purportedly

excluded streamside and riparian areas, have not been successful and have been limited to a small portion of the impacted areas within the 18 permitted allotments and 4 vacant allotments. Consequently, cattle continue to access streamside and riparian areas that are purportedly excluded from such cattle.

117.    Even if the Forest Service was successful in finally excluding cattle from purportedly excluded streamside and riparian areas, the agency has failed to develop and implement, in consultation with FWS, corrective measures for mitigating the extensive damage this unauthorized grazing has caused to threatened or endangered species and/or their designated critical habitat on the 18 permitted allotments and 4 vacant allotments. 16 U.S.C. § 1536(a)(1). The Forest Service's failure to "utilize [its] authorities . . . by carrying out programs for the conservation of endangered species" in consultation with and with the assistance of FWS violates section 7 (a)(1) of the ESA. *Id*.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

1.    Declare that the Forest Service and FWS are violating section 7(a)(2) of the Endangered Species Act and 50 C.F.R. § 402.16 by failing to reinitiate and complete consultation on the 18 permitted grazing allotments identified in the paragraphs above and listed in Table 1 in order to ensure that grazing activities on those allotments do not jeopardize the continued existence of listed species or result in the destruction or adverse modification of their designated critical habitat;

2.    Declare that the Forest Service is violating Section 7(d) of the Endangered Species Act by failing to remove all cattle within purportedly excluded riparian areas on the 18 permitted grazing allotments identified above and listed in Table 1, pending the completion of reinitiated consultation;

3.    Declare that the Forest Service is violating Section 7(a)(1) of the Endangered Species Act by failing, in consultation with and with the assistance of FWS, to develop and implement a program to conserve listed species impacted by the agency's grazing program, including the failure to mitigate damage caused by unauthorized

permitted cattle, and feral or unbranded cattle, to streamside and riparian streamside providing habitat for listed species on the 18 permitted grazing allotments and 4 vacant grazing allotments identified above and listed in Table 1;

4.      Order the Forest Service to remove all cattle within purportedly excluded riparian areas on the 18 permitted grazing allotments and 4 vacant grazing allotments identified above and listed in Table 1 within ten days of this Court's Order;

5.      Order the Forest Service to identify sources of unauthorized livestock use in Verde River watershed riparian areas on the 18 permitted grazing allotments and 4 vacant grazing allotments identified above and listed in Table 1 within three months, and within six months, make necessary repairs to fencing infrastructure to prevent future unauthorized use. In areas where unauthorized cattle use cannot be remedied by existing infrastructure, the Forest Service shall relocate fencing or close pastures to grazing as necessary to prevent further unauthorized riparian grazing;

6.      Order the Forest Service to commit to monthly inspection of riparian areas within vacant allotments, and within excluded riparian areas on permitted allotments when cattle are in a pasture adjacent to purportedly excluded riparian areas, and to weekly inspections if there is a "water gap" in the pasture; further Order the Forest Service to immediately make these inspections available through a website portal or similar means;

7.      Order the Forest Service and FWS to reinitiate and complete consultation on the 18 permitted grazing allotments identified in the paragraphs above and listed in Table 1;

8.      Order the Forest Service, in consultation with and with the assistance of FWS, to develop a program for the conservation of endangered and threatened species impacted by the Forest Service's grazing program, including actions to mitigate damage caused by unauthorized permitted cattle, and feral or unbranded cattle, to streamside and riparian streamside providing habitat for listed species on the 18 permitted grazing allotments and 4 vacant grazing allotments;

1       9.     Grant Plaintiffs their reasonable attorneys' fees and costs associated with

2   this action, as provided by the ESA, § 1540(g)(4), or the Equal Access to Justice Act, 28

3   U.S.C. § 2412; and

4       10.    Provide such additional relief as the Court may deem just and proper.

5   Respectfully Submitted this 17th day of September, 2020.

6

7                          /s/ Brian Segee

                             Brian Segee (Cal. Bar No. 200795)

8                        Center for Biological Diversity

                        660 S. Figueroa Street, Suite 1000

9                        Los Angeles, CA 90017

                        (805) 750-8852

10                     bsegee@biologicaldiversity.org

11                    *Pro Hac Vice Application Pending*

12                     Marc Fink (Minn. Bar No. 343407)

13                    Center for Biological Diversity

                    209 East 7th Street

14                   Duluth, MN 55805

                   Tel: (218) 464-0539

15                  mfink@biologicaldiversity.org

16                  *Pro Hac Vice Application Pending*

17                  Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

**Table 1: Verde Watershed Allotments**

| # | Allotment | BiOp | Riparian Areas | Critical Habitat |
|---|---|---|---|---|
| 1 | Muldoon | 12/30/02 | Verde River | LM, RS, SD, YBC |
| 2 | West Bear/Del Rio | 12/30/02 | Verde River | LM, NHGS, RS, SD, YBC |
| 3 | China Dam | 12/30/02 | Verde River | LM, NHGS, RS, SD, YBC |
| 4 | Sand Flat | 12/30/02 | Verde River | LM, NHGS, RS, SD, YBC |
| 5 | Perkinsville | 12/30/02 | Verde  River | LM, NHGS, RS, SD, YBC |
| 6 | Horseshoe | 12/30/02 | Verde River | LM, NHGS, RS, SD, YBC |
| 7 | Antelope Hills | 12/30/02 | Verde River | LM, NMGS, RS, SD, SWWF, YBC |
| 8 | Windmill West | 8/14/14 | Verde River | GC, LM, NMGS, RS, SD, SWWF, YBC |
| 9 | Brown Springs | 12/30/02 | Verde River, Gap Creek, Coldwater Creek. | RS, SD, SWWF, YBC |
| 10 | 13-Mile Rock | 5/6/16 | Verde River, Cottonwood Springs, West Verde River | RS, SD, SWWF, YBC |
| 11 | Hackberry/Pivot Rock | 5/6/16 | Verde River | SWWF |
| 12 | Beaver Creek | 5/6/16 | Wet Beaver Creek, Red Tank Draw | GC |
| 13 | Apache Maid | 5/6/16 | Wet Beaver Creek, Red Tank Draw | GC, NHGS, NMGS, YBC |
| 14 | Walker Basin | 5/6/16 | Beaver Creek, Walker Creek | GC, YBC |
| 15 | Skeleton Ridge | 6/25/97 | Verde River, Houston Creek, Fossil Creek | RS, SWWF, YBC |
| 16 | Fossil Creek | 5/6/16; 5/7/13 | Verde River, Fossil Creek | CLF, LM, RS, SD, SWWF, YBC |
| 17 | Deadman Mesa | n/a-Vacant | Fossil Springs | LM, SD |

| 18 | Cedar Bench | 9/8/95 | Verde River, East Verde River, Fossil Creek | LM, RS, SD, SWWF, YBC |
|---|---|---|---|---|
| 19 | Bull Springs | n/a- Vacant | East Verde River | NHGS |
| 20 | Red Creek | 12/19/00 | Verde River, Red Creek, Tangle Creek, Zigzag Creek | SWWF |
| 21 | Sears Club/Chalk Mountain | n/a- Vacant | | LM, RS, SD, SWWF, YBC |
| 22 | Bartlett | n/a- Vacant | | LM, RS, SD, SWWF, YBC |

CLF-Chiricahua leopard frog
GC-Gila chub
LM-Loach minnow
MSO-Mexican spotted owl
NHGS-Narrow-headed garter snake
NMGS-Northern Mexican garter snake
RS-Razorback sucker
SD-Spikedace
SWWF-Southwestern willow flycatcher
YBC-Yellow-billed cuckoo