Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Phone: (805) 750-8852
Email: bsegee@biologicaldiversity.org
*Pro Hac Vice*

Marc Fink (Minn. Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, MN 55805
Tel: (218) 464-0539
Email: mfink@biologicaldiversity.org
*Pro Hac Vice*

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Center for Biological Diversity; and Maricopa Audubon Society,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>U.S. Forest Service; and U.S. Fish and Wildlife Service,<br><br>　　Defendants. | Case No.: 3:20-cv-8243-DGC<br><br>**OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS THE U.S. FISH AND WILDLIFE SERVICE AS A PARTY** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................... 5

    I.    The Duty to Reinitiate Consultation Lies With Both the Action Agency (Forest Service) and Consulting Agency (FWS) ........................................... 5

CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Probert*,
   412 F. Supp. 3d. 1188 (D. Mont. 2019) ................................................................. 6-7, 7-8

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................................ 9-10

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
   698 F.3d 1101 (9th Cir. 2012) ......................................................................................... 8

*Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV-20-00020-TUC-DCB,
   2020 U.S. Dist. LEXIS 213424 (D. Ariz. Nov. 16, 2020) ................................... *passim*

*City of Santa Clarita v. United States DOI*, Case No. CV-02-00697 DT (FMOx),
   2006 U.S. Dist. LEXIS 96750 (C.D. Cal. Jan. 30, 2006) ............................................... 7

*Defenders of Wildlife v. Flowers*,
   414 F.3d 1066 (9th Cir. 2005) ......................................................................................... 7

*Defenders of Wildlife v. Zinke*,
   856 F.3d 1248 (9th Cir. 2017) ......................................................................................... 8

*Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*,
   255 F.3d 1073 (9th Cir. 2001) ......................................................................................... 6

*Forest Guardians v. Veneman*,
   392 F. Supp. 2d 1082 (D. Ariz. 2005) ........................................................................... 4

*Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*,
   230 F. Supp. 3d 1106 (N.D. Cal. 2017) ..................................................................... 6, 8

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................................................................... 11

*Or. Nat. Res. Council v. Allen*,
   476 F.3d 1031 (9th Cir. 2007) ......................................................................................... 8

*Pacificans for a Scenic Coast v. Cal. DOT*,
   204 F. Supp. 3d 1075 (N.D. Cal. 2016) ..................................................................... 6, 7

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ................................................................................ 6

*San Carlos Apache Tribe v. United States*,
    417 F.3d 1091 (9th Cir. 2005) .............................................................................. 12

*Sierra Club v. Marsh*,
    816 F.2d 1376 (9th Cir. 1987) .............................................................................. 10

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV-97-2562-PHX-SMM,
    2011 U.S. Dist. LEXIS 25027 (D. Ariz. Mar. 30, 2001)............................................. 2, 3

*Wild Fish Conservancy v. United States EPA*,
    331 F. Supp. 3d 1210 (W.D. Wash. 2018) ................................................................ 6, 7

*Yurok Tribe v. United States Bureau of Reclamation*,
    231 F. Supp. 3d 450 (N.D. Cal. 2017) ..................................................................... 8

**STATUTES**

16 U.S.C. § 1540(g) ........................................................................................................ 5

**EXECUTIVE MATERIALS AND REGULATIONS**

50 C.F.R. § 402.14 ........................................................................................................ 5

50 C.F.R. § 402.16 ........................................................................................ 6, 9, 11, 12

77 Fed. Reg. 10,810 (Feb. 13, 2012) ............................................................................ 4

84 Fed. Reg. 44,976 (April 27, 2019) .......................................................................... 10

Endangered Species Consultation Handbook, Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act ................ 8, 9

# INTRODUCTION

Plaintiffs Center for Biological Diversity and Maricopa Audubon Society filed this action on September 17, 2020, alleging, *inter alia*, that the U.S. Forest Service ("Forest Service") and U.S. Fish and Wildlife Service ("FWS") are violating the Endangered Species Act ("ESA") and its implementing regulations by failing to reinitiate and complete Section 7 consultation on 18 grazing allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests, due to widespread unauthorized cattle grazing within streamside and riparian areas that provide essential habitat for several threatened and endangered species. Pl.'s Compl., Claim I, ECF No. 1. In order to remedy these violations, Plaintiffs seek a Court Order directing the Forest Service and FWS to reinitiate and complete consultation on the allotments within a reasonable timeframe, and specifically directing the Forest Service to remove all cattle from unauthorized areas, to commit to more frequent and regular monitoring of riparian and streamside areas purportedly excluded from cattle, and to remediate the extensive damage that has been caused by the unauthorized grazing. *Id*., Request for Relief.

On November 30, 2020, Federal Defendants filed a Motion to Dismiss FWS as a party to this litigation pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 10. Defendants argue that Plaintiffs' complaint "lacks any allegations that would support a conclusion that FWS has violated the [ESA] in any way [and that] absent[] such allegations, Plaintiffs cannot invoke a waiver of sovereign immunity," and therefore, "have failed to state a claim against FWS." Defs.' Br. at 1. As detailed in this opposition, the plain language of the ESA regulations, the cooperative structure of the ESA Section 7 consultation requirements, and extensive Ninth Circuit caselaw demonstrate that FWS has a shared legal responsibility with the Forest Service to reinitiate and complete the grazing consultations. Thus, Federal Defendants' request to dismiss FWS as a party to this case should be denied.

# BACKGROUND

Livestock grazing is a leading contributor to riparian habitat loss and degradation within the western United States, causing widespread and significant adverse impacts to watershed hydrology, stream channel morphology, soils, vegetation, water quality, and fish and wildlife habitat. Pl.'s Compl. ¶¶ 37-41. These riparian ecosystems comprise less than 1% of the surface area within the eleven western states but support imperiled native fish, a higher diversity of breeding songbirds than any other habitat, and many species of small mammals, amphibians, and reptiles. *Id*. Despite their extraordinary environmental importance, western riparian habitats were treated as "sacrifice areas," dedicated to providing food and water for domestic livestock, for much of the twentieth century.

On southwestern public lands, the Forest Service continued to routinely authorize cattle grazing on streams and rivers prior to the late 1990s, even after several aquatic and riparian dependent species were listed as threatened or endangered under the ESA. In 1997, Plaintiff Center for Biological Diversity and others successfully brought suit to compel the Forest Service and FWS to conduct ESA Section 7 consultation with respect to USFS's authorization of grazing on 158 grazing allotments providing habitat for listed species including Southwestern willow flycatcher, spikedace, and loach minnow. *Sw. Ctr. for Biological Diversity v. United States Forest Serv.*, No. CV-97-666-TUC-JMR, consolidated with No. CV-97-2562-PHX-SMM, 2001 U.S. Dist. LEXIS 25027, at *4-6 (D. Ariz. Mar. 30, 2001).

In response that litigation, the Forest Service and FWS worked to fulfill their ESA Section 7 duties with respect to all 962 grazing allotments within the Forest Service Southwestern Region. *Id*. at *4-5. Central to that effort, the agencies developed the "Grazing Guidance Criteria for Preliminary Effects Determinations for Species Listed as Threatened, Endangered, or Proposed for Listing," and established a Federal "Interagency Grazing Consultation Team," tasked with "assisting each National Forest" in consultation tasks, including "applying the Guidance Criteria to individual allotments and making effects determinations in a manner consistent with all other National

Forests," and "identifying conflicts between the ongoing grazing activities and listed species conservation." *See* Biological Opinion for Southwest Region U.S. Forest Service Ongoing Livestock Grazing Activities on Allotments" (FWS Feb. 2, 1999), at p. 7.[1] This Guidance Criteria continues to guide grazing ESA consultations within the USFS Southwestern Region.

Of the 962 grazing allotments in the southwestern region, the Forest Service concluded that there would be no effect to listed species or their critical habitat on nearly two-thirds, or 619 allotments. *Sw. Ctr. for Biological Diversity*, 2001 U.S. Dist. LEXIS 25027, at *9. An additional 321 allotments concluded with "may affect, not likely to adversely affect" determinations. *Id*. USFS made "likely to adversely affect" findings for only 22 allotments (comprising just over *2 percent of all allotments in USFS R3*). *Id*. at *10. FWS prepared a final Biological Opinion for these 22 allotments in February 1999. *Id*. at *11. Together, the USFS and FWS concluded that only one of the Region's 962 individual grazing allotments violated Section 7's substantive jeopardy and critical habitat requirements. *Id*. at *11.

Importantly, these 'no jeopardy' and 'not likely to adversely affect' determinations depend heavily on Forest Service commitments to exclude cattle from hundreds of miles of riparian areas. *Id*. at *11 ("The Forest Service has taken numerous measures to ensure that cattle grazing will have little, if any, impact on the loach minnow and spikedace while formal consultation is taking place. These measures include exclusion of livestock from watersheds and frequent monitoring and enforcement of these livestock exclusions. Exclusion of livestock from [streams] in the national forests has eliminated any direct adverse effects to the loach minnow and/or spikedace and minimized any indirect adverse impacts to these species.").[2]

---

[1] *Available at*: https://www.fws.gov/southwest/es/arizona/Documents/Biol_Opin/000089_RO_Grazing.pdf (last accessed December 28, 2020).
[2] Unless otherwise noted, internal citations and quotations are omitted from caselaw citations.

Since that time, the Forest Service and FWS have periodically completed subsequent Section 7 consultations for new authorizations issued for individual grazing allotments, including the allotments at issue in this litigation. *See* Pl.'s Compl. ¶¶ 60-93. For more than two decades since that initial consultation, grazing riparian exclusions, as well as regular monitoring to ensure the effectiveness of those exclusions, have continued to serve as a cornerstone for ESA compliance in relation to the Forest Service grazing program and site-specific decisions authorizing grazing on individual grazing allotments. Pl.'s Compl. ¶¶ 42-53; *see also Forest Guardians v. Veneman*, 392 F. Supp. 2d 1082, 1090 (D. Ariz. 2005) ("The other mitigation measures FWS relied on in reaching its no jeopardy decision were measures in place to exclude livestock from other areas of critical habitat, loach minnow habitat, and riparian areas of tributaries."); Final Rule "Uplisting" Spikedace and Loach Minnow from Threatened to Endangered and Designating Critical Habitat, 77 Fed. Reg. 10,810 (Feb. 13, 2012) (noting that livestock grazing "is one of the few threats where adverse effects to species such as spikedace and loach minnow are decreasing, due to improved management on Federal lands. This improvement occurred primarily by discontinuing grazing in the riparian and stream corridors.").

Concerned that the Forest Service was failing to monitor and maintain riparian grazing exclusions (and that FWS was failing in its obligation to ensure Forest Service compliance with its ESA section 7 consultation commitments), in 2019 and 2020 Plaintiff Center for Biological Diversity conducted on-the-ground assessments in order to verify whether cattle continue to be excluded from riparian areas on allotments within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests. Pls.' Compl. ¶¶ 54-59. These surveys documented extensive, widespread, and egregious streamside and riparian degradation in the majority of surveyed areas, including the mainstem Verde River as well as tributaries including the East Verde River, Fossil Creek, Red Creek, and other waters. Plaintiffs compiled these survey results into detailed reports, and provided the reports to the Forest Service, but the Forest Service

has not taken adequate corrective action. *Id.*

On March 5, 2020, Plaintiffs provided the Forest Service and FWS with sixty (60) days' Notice of Intent pursuant to the citizen suit of the ESA. 16 U.S.C. § 1540(g). Plaintiffs notified the agencies that they intended to file suit unless the agencies met their legal duties to reinitiate and complete consultation on 22 Verde River watershed allotments where the Center's surveys had documented the most significant damage, and the Forest Service took immediate action to remove cattle from riparian areas, to remediate damage caused by the unauthorized grazing, and to conduct more frequent monitoring of riparian and streamside areas. On May 19, 2020, the Forest Service Southwestern Regional Forester responded to the NOI, stating that the agency "did not identify any allotments that have compliance issues associated with existing consultation documents." FWS did not respond to the NOI. On September 17, 2020, Plaintiffs filed this suit.

## ARGUMENT

**A.     The Duty to Reinitiate Section 7 Consultation Lies With Both the Action Agency (Forest Service) and Consulting Agency (FWS)**

Federal Defendants move to dismiss FWS as a party based on the assertion that "FWS plays only a consulting role in the process and, as the consulting agency, FWS has no authority to reinitiate consultation or to force the action agency—the Forest Service—to reinitiate consultation." Defs.' Br. at 2. Defendants acknowledge that "[t]his is not to say that FWS has no duties with respect to completing reinitiated consultation, but its 'duty to reinitiate,' so to speak, arises *only if*, and when, the action agency elects to reinitiate." *Id*. at 7 (emphasis in original). Defendants' argument does not square with the plain language of the reinitiation regulation, has been rejected by numerous court decisions in the Ninth Circuit, and should be denied here. Indeed, Defendants' precise argument was rejected last month by another Court in this District. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV-20-00020-TUC-DCB, 2020 U.S. Dist. LEXIS 213424, at * 11-12 (D. Ariz. Nov. 16, 2020) ("[T]he law in the Ninth Circuit also makes

it clear that [the] ESA establishes a coterminous authority for both the action agency (USFS) and the consulting agency (FWS) to reinitiate consultation when one of the triggering events occur under 50 C.F.R. § 402.16(a)").[3]

The ESA regulations provide that "[r]einitiation of consultation is required and shall be requested by the Federal [action] agency *or by the [consulting agency FWS]*, where discretionary Federal involvement or control over the action has been retained or is authorized by law," and one of four triggering events occurs. 50 C.F.R. § 402.16(a) (emphasis added). Courts within the Ninth Circuit have repeatedly and consistently interpreted this language as placing a duty to reinitiate consultation on both the action agency and consulting agency. *See, e.g.*, *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1076 (9th Cir. 2001) ("The duty to reinitiate lies with both the action agency and the consultation agency."); *Pacificans for a Scenic Coast v. Cal. DOT*, 204 F. Supp. 3d 1075, 1093 (N.D. Cal. 2016) ("Consistent with the plain text of the regulation, the Ninth Circuit has stated that '[t]he duty to reinitiate consultation lies with both the action agency and the consulting agency.'") (*quoting Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008)); *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1117 (N.D. Cal. 2017) ("the Ninth Circuit has already addressed this precise issue multiple times and confirmed that both the action agency and the consulting agency have a duty to reinitiate consultation."); *Wild Fish Conservancy v. United States EPA*, 331 F. Supp. 3d 1210, 1226 (W.D. Wash. 2018) ("[T]he overwhelming weight of authority is that the consulting agency's duty to reinitiate consultation is coterminous with that of the action agency . . . Because by its plain language the provision that obligates EPA to reinitiate consultation applies equally to NMFS, and because this question appears to be amply settled in this Circuit, the Court denies Defendants' motion to dismiss."); *All. for the Wild Rockies v. Probert*, 412 F.

---

[3] The *Center for Biological Diversity* case involves allegations of unauthorized grazing on riparian areas within the upper Gila River watershed on the Gila National Forest (New Mexico) and Apache-Sitgreaves National Forest (Arizona).

Supp. 3d. 1188, 1201 (D. Mont. 2019) ("Defendants argue that Alliance cannot maintain a reinitiation claim against the Fish and Wildlife Service because the Fish and Wildlife Service lacks the authority to require an action agency to reinitiate consultation. This argument is inconsistent with the Ninth Circuit's view of consultation duties."); *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 213424, at \*18 ("[T]he Ninth Circuit cases relied on by the Plaintiff have answered the precise question which is at the heart of the argument made by the Defendants. In the Ninth Circuit, 50 C.F.R. § 402.16 places a coterminous duty on both the acting agency and consulting agency to consult, if any of the enumerated criteria are met.").[4]

Attempting to sidestep the plain language of the regulation and the "overwhelming weight of authority," *Wild Fish Conservancy*, 331 F. Supp. 3d at 1226, Defendants assert that *Defenders of Wildlife v. Flowers*, 414 F.3d 1066 (9th Cir. 2005) supports its contrary argument that the duty to reinitiate consultation lies solely with the action agency. Defs.' Br. at 8. *Flowers* is inapposite, as it addressed the duty to consult *in the first instance*, which is governed by a distinct regulation, with language focused on the duties of the action agency. 50 C.F.R. § 402.14 ("Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat."). In contrast, the plain language of § 402.16, the reinitiation regulation at issue in this case, "describes the Fish and Wildlife Service's obligation in the same terms as the action agency's obligation." *Pacificans for a Scenic Coast*, 204 F. Supp. 3d at 1093; *see also All. for the Wild Rockies*, 412 F. Supp. 3d. at 1201 ("Section 402.14 merely *allows* the Fish and Wildlife Service to request consultation. Reinitiation under § 402.16, on the other hand, *obligates* either the action

---

[4] Although the court in *City of Santa Clarita v. United States DOI*, Case No. CV-02-00697 DT (FMOx), 2006 U.S. Dist. LEXIS 96750, at \*40-41 (C.D. Cal. Jan. 30, 2006), dismissed FWS from a reinitiation claim, the court's decision is made in cursory fashion, and is an outlier to Ninth Circuit precedent and the weight of authority.

Opposition to Motion to Dismiss                                                                                                  Page 7

agency or Fish and Wildlife Service to act.") (emphasis in original).[5]

Defendants' assertion that dismissing FWS would "reflect[] the basic scheme that Congress created in Section 7 of the ESA" is equally unpersuasive. Defs.' Br. at 9. The "basic scheme" of Section 7 involves "procedures for interagency cooperation to conserve Federally listed species and designated critical habitats," rather than solely placing those duties on either the action agency or consulting agency. Endangered Species Consultation Handbook, Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act, at xviii) (glossary of terms) (hereafter, "Consultation Handbook").[6] As recently explained by a court rejecting a government attempt to dismiss FWS as a party to a reinitiation challenge:

> "Formal consultation is a collaborative process that requires the participation of both the [action agency] and [consulting agency]. *The purpose of reinitiating formal consultation is not simply to check off a procedural box, but to complete a formal consultation process that ensures to the extent possible that there are no substantive violations of the ESA. Both the [consulting agency] and [action agency] have a clear obligation to participate in and complete this consultation process*."

*Hoopa Valley Tribe*, 230 F. Supp. 3d at 1117 (emphasis added) (*citing Salmon Spawning*, 545 F.3d at 1229); *see also companion case Yurok Tribe v. United States Bureau of Reclamation*, 231 F. Supp. 3d 450 (N.D. Cal. 2017).

Defendants' argument that FWS must be dismissed as a party because the Consultation Handbook "makes it clear that 'the Services [cannot] require Federal agencies to reinitiate consultation if they choose not to do so'" is also without merit.

---

[5] Other cases cited by Defendants similarly fail to support their motion to dismiss, as the *dicta* statements in those cases that an action agency has a duty to reinitiate consultation do not speak to the separate question of whether the consulting agency shares that duty. Defs.' Br. at 8 (citing *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1264 (9th Cir. 2017); *Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1040 (9th Cir. 2007); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012)).

[6] Available at: https://www.fws.gov/endangered/esa-library/pdf/esa_Section7_handbook.pdf

Defs.' Br. at 10 (*quoting* Consultation Handbook, at p. 2-11.). As the preceding discussion explains, under the regulatory plain language and extensive caselaw interpreting that language, if any of the four triggering factors are met, and discretionary federal involvement or control has been retained, "[r]einitiation of consultation is required and shall be requested" by either the action agency or consulting agency. 50 C.F.R. § 402.16(a). This duty is further detailed in the same section of the Handbook quoted by Defendants, which directs that "[w]hen consultation needs to be reinitiated but the action agency neither agrees nor responds, [FWS] should send a letter clearly outlining the change of circumstances supporting the need for reinitation," and "present[ing] a clear case for why [FWS has] determined that one or more of the four general conditions for reinitiating consultation have been triggered." *Id*. at 2-11. If the action agency "still refuses to consult, the issue should be elevated to . . . [FWS's Regional Office] and may ultimately be referred to . . . the FWS Law Enforcement Division and the Office of the Solicitor." *Id*. at 2-10 to 2-11.[7]

The regulation thus imposes this mandatory duty on FWS regardless of whether or not the action agency can theoretically ignore that request. The action agency may, in fact, theoretically disregard even the concluding outcome of the formal Section 7 process—a biological opinion prepared by FWS. But as the Supreme Court has noted, "while the Service's Biological Opinion theoretically serves an 'advisory function,' in reality it has a powerful coercive effect on the action agency." *Bennett v. Spear*, 520 U.S. 154, 169 (1997); *id*. at 170 (noting "the virtually determinative effect of [FWS's]

---

[7] Here, FWS has been provided information documenting pervasive cattle damage on numerous streams occupied by listed species within the Verde River watershed on the Prescott, Coconino, and Tonto National Forests. Moreover, FWS should have been aware of unauthorized riparian grazing through the Forest Service annual monitoring requirements. While Federal Defendants assert that participating in this litigation would "divert [FWS's] limited resources away from its primary mission of conserving listed species and habitat to time intensive litigation-related activities," Defs.' Br. at 8, FWS has taken *no* action to respond to or investigate that information, or otherwise fulfill its responsibilities under ESA Section 7 and 50 C.F.R. § 402.16.

biological opinions."); *see also Sierra Club v. Marsh*, 816 F.2d 1376, 1388 (9th Cir. 1987) (enjoining project where action agency declined consulting agency's request to reinitiate consultation) ("[W]e conclude that the [action agency] violated the regulation by failing to reinitiate consultation after learning [new information relevant to environmental impacts] . . . The FWS reached the same conclusion . . . In holding as we do, we defer to the agency with the more appropriate expertise."); *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 213424, * 15 ("In other words, the court in *Marsh* deferred to the FWS request for reinitiation of consultation as being determinative to trigger the required consultation under 402.16(a)."). The fact that FWS's Section 7 actions, including preparation of biological opinions and requests for reinitiation, are theoretically advisory does not negate FWS's central role and enforceable legal duties as the consulting agency in the ESA Section 7 interagency consultation process. *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 213424, *17 ("In short, the regulatory scheme involves procedures for interagency cooperation rather than placing the duties of consultation on either the action agency or consulting agency.").

      Although Defendants characterize their argument as a "longstanding and reasonable interpretation of the plain language of its own regulation," Defs.' Br. at 11, FWS (along with National Marine Fisheries Service, responsible for administering the ESA with respect to marine and anadromous species) recently completed its most substantive changes to the ESA Section 7 regulations in several decades. 84 Fed. Reg. 44,976 (April 27, 2019). Despite the extensive, directly contradictory caselaw interpreting the reinitiation duty under the plain language of § 402.16 to apply equally to both the action and consulting agency, FWS left the relevant language of the regulation unchanged during this rulemaking process. Accordingly, Defendants' argument that its contrary interpretation is entitled to deference should be rejected. *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 213424, *20 ("The lack of any ambiguity in the regulation for over 20 years advises against the need for interpretive deference. The FWS's new take on the regulation is not persuasive because it flies in the face of the

clear language of the regulation as established under the law of this Circuit."); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (reaffirming that agencies are not afforded deference by the court "unless the language of the regulation is genuinely ambiguous.")

Finally, Defendants argue that the recent *Center for Biological Diversity* decision "erred in interpreting" 50 C.F.R. § 402.16, by allegedly "conflating the first clause '[r]einitiation of consultation is required'—which is silent as to which agency must reinitiate consultation—with the distinct second clause imposing on the Federal action agency or the consulting agency a duty to 'request' reinitiation of consultation when certain criteria are met." Defs.' Br. at 12. Under this interpretation, "'requesting' reinitiation of consultation and actually reinitiating consultation are two different actions." *Id*. at 11.

The Court should reject Defendants' elaborate interpretation of § 402.16, which "split[s] hairs that do not exist under the ESA regulation." *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 213424, *12. Instead, "when one of the triggering events occur under 50 C.F.R. § 402.16(a) . . . FWS has the dual responsibility to reinitiate consultation by requesting it." *Id*. at *13.

While Defendants express concern that enforcing the reinitiation duty will "divert [FWS'] limited resources . . . to time intensive litigation-related activities," Defs.' Br. at 8, their interpretation of § 402.16 would create an *additional* layer of ESA litigation, by allowing separate suits for "failure to request" claims and "reinitiation" claims. Defendants' interpretation also has logical blind spots. For example, it acknowledges that the action agency has a legally enforceable duty to request the consulting agency to reinitiate consultation when one of the four triggering events has occurred. Yet the consulting agency would be powerless to respond to such request, since under Defendants' interpretation of § 402.16, authority to reinitiate consultation lies solely with the action agency. Defs.' Br. at 8-14.

Contrary to Defendants' convoluted interpretation, the regulation's language directing that such reinitiation "shall be requested" does not create a second and separate

obligation prior to the actual reinitiation, but instead simply reflects that ESA Section 7 consultation is a cooperative process dependent on the good-faith involvement and participation of both the action agency and consulting agency. The ultimate inability of either the action agency or the consulting agency to compel the other to reinitiate consultation does not absolve either agency from their shared duty to conduct such reinitiation when one of the four triggering regulatory events occurs. The natural reading of the plain language of § 402.16—consistent with the extensive Ninth Circuit caselaw—is that the duty to reinitiate consultation (including both the request and the "actual reinitiation") is held equally by the Forest Service and FWS.[8]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss FWS as a party pursuant to Fed. R. Civ. P. 12(b) should be denied.

Respectfully Submitted this 29th day of December, 2020.

s/ Brian Segee
Brian Segee
Marc Fink
Attorneys for Plaintiffs

---

[8] Because Plaintiffs have properly alleged a legal duty under the ESA against FWS for its failure to reinitiate and complete Section 7 consultation, and the Administrative Procedure Act provides a cause of action for enforcing that legal duty, Federal Defendants have waived sovereign immunity. *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005) ("[I]n enacting the APA, Congress was quite explicit about its goals for eliminating sovereign immunity as an obstacle in securing judicial review of the federal official conduct.").