WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States Forest Service, et al.,<br><br>Defendants. | No. CV-20-8243-PCT-DGC<br><br>**ORDER** |

Defendants United States Forest Service ("Forest Service") and the U.S. Fish and Wildlife Service ("FWS") have filed a motion to dismiss FWS from a complaint filed by Plaintiffs Center for Biological Diversity and Maricopa Audubon Society. Doc. 10. The motion is fully briefed, and no party requests oral argument. The Court will deny the motion.

**I.     Background and Regulatory Framework.**

Plaintiffs filed this action in September 2020, alleging that Defendants violated the Endangered Species Act ("ESA") and its implementing regulations. Doc. 1. Congress passed the ESA to protect endangered and threatened species.[1] *See* 16 U.S.C. § 1531.

Section 7 of the ESA requires "action agencies" – federal agencies authorizing, funding, or carrying out actions which "may affect" listed species or their critical habitat –

---

[1] Under the ESA, species are "listed" as "endangered" if "in danger of extinction throughout all or a significant portion of its range," and as "threatened" if "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. §§ 1532(6), 1532(20).

to work with "consulting agencies" to guarantee that agency actions are not likely to jeopardize the continued existence of endangered or threatened species. *See id.* § 1536(a)(2); 50 C.F.R. § 402.14(a). The consulting agency in this case is FWS.[2]

If the action agency determines, with FWS's written concurrence, that the action "is not likely to adversely affect" listed species or critical habitat, no formal consultation is required. *Id.* §§ 402.13(c), 402.14(b)(1). But if the action may affect a listed species or critical habitat, the action agency must commence a formal consultation. *Id.* § 402.14(a). At the end of this process, the consulting agency issues a biological opinion determining whether the proposed action is "likely to jeopardize" the continued existence of listed species or adversely impact critical habitat. *Id.* § 402.14(g)(4). Until formal consultation is complete, the action agency cannot make any "irreversible or irretrievable commitment of resources" which would "foreclos[e] the formulation or implementation of any reasonable and prudent alternative measures" to protect endangered species. 16 U.S.C. § 1536(d). Of particular significance in this case, the consultation process must be reinitiated if certain triggering circumstances occur, such as the emergence of new information that the agency action would have an adverse impact not previously considered, or that a new listed species or critical habitat may be affected by the identified action. *See* 50 C.F.R. § 402.16(a)(1)-(4); Doc. 1 ¶ 31.

### A. Plaintiffs' Allegations.

The Court takes the factual allegations of Plaintiffs' complaint as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Riparian ecosystems provide a crucial habitat for many species of fish and wildlife. *See* Docs. 1 ¶ 2, 12 at 1. One such ecosystem is the Verde River watershed in Arizona, which is home to several ESA-listed species. Doc. 1 ¶¶ 34-36. Nearly two-thirds of the watershed is on federal public land managed in large part by the Forest Service. *Id.* ¶ 35.

---

[2] Under the ESA, two consulting agencies share responsibilities for administering the act: FWS for terrestrial and fresh water species and the National Marine Fisheries Service for marine species. 50 C.F.R. 402.01(b); Doc. 10 at 9.

The listed species in the Verde River watershed have been jeopardized by livestock grazing, which adversely impacts riparian habitat and is a leading cause of species endangerment in the Southwest. *Id.* ¶¶ 37-41. The Forest Service has recognized the negative impacts of livestock grazing in the watershed for decades, but until the late 1990s continued to routinely authorize the practice. *Id.* ¶¶ 42-43.

In 1997, Plaintiff Center for Biological Diversity and others successfully sued to compel the Forest Service and FWS to conduct ESA Section 7 consultations with respect to the Forest Service's authorization of 158 grazing allotments – several within the Verde River watershed – that provided habitat for endangered and threatened species. *Id.* ¶ 44. In response, the Forest Service and FWS took several steps to comply with Section 7. *Id.* ¶ 46. These included developing Grazing Guidance Criteria to determine the effects of grazing on listed species and establishing a federal interagency consultation team tasked with applying the Guidance Criteria to individual allotments. *Id.* The agencies continue to use an updated version of the Grazing Criteria to determine whether livestock grazing is likely to adversely affect the threatened and endangered species in the watershed or destroy their habitat. *Id.* ¶ 48.

Since the initial consultation process in the late 1990s, Defendants have periodically completed Section 7 consultations for new grazing allotments, including the Verde River allotments at issue in this litigation. *Id.* ¶¶ 60-93. In deciding how to designate an allotment under the Grazing Criteria, the Forest Service depends heavily on its grazing exclusions – commitments to exclude cattle from hundreds of miles of riparian areas. *Id.* ¶¶ 46-47; Doc. 12 at 7. The grazing exclusions, as well as regular monitoring to ensure the effectiveness of those exclusions, serve as a "cornerstone" in Defendants' efforts to comply with their ESA duties. Doc. 1 ¶ 47.

In 2019 and 2020, Plaintiff Center for Biological Diversity conducted on-the-ground assessments of riparian areas within the Verde River watershed after suspecting that the Forest Service was failing to monitor and maintain riparian grazing exclusions. *Id.* ¶ 54; Doc. 12 at 8. The assessments revealed damaged or nonexistent exclusion fencing,

resulting in widespread unauthorized cattle presence and associated damage to riparian areas. Doc. 1 ¶ 56. Plaintiffs compiled this information into detailed reports for the Forest Service, but contend that it never responded with adequate corrective action. *Id.* ¶ 58.

In March 2020, Plaintiffs provided Defendants with 60 days' notice of intent to sue under the ESA's citizen suit provision, which allows individuals to file suit against federal agencies to enforce the substantive provisions of the ESA. Doc. 1 ¶ 7; 16 U.S.C. § 1540(g). Plaintiffs notified Defendants that a lawsuit was forthcoming unless they reinitiated and completed consultation on the allotments where the Center's surveys had documented the most significant damage. Doc. 12 at 9. Plaintiffs also demanded that the Forest Service take immediate action to remove cattle from riparian areas, remediate damage caused by the unauthorized grazing, and conduct more frequent monitoring. *Id.*

In May 2020, the Forest Service responded by claiming that it had not identified any allotments that were not in compliance with existing consultation documents. *Id.* FWS did not respond. *Id.* On September 17, 2020, Plaintiffs filed this suit, alleging that Defendants violated 50 C.F.R. § 402.16 – the regulation governing the reinitiation of consultation under Section 7 of the ESA – by failing to reinitiate and complete consultation with respect to the allotments most damaged by grazing.[3] Doc. 1 at 28. Defendants now move to dismiss FWS as a party to the litigation pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10.

### B. Legal Standard.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* When considering a facial attack, the Court takes the allegations in the plaintiff's complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

---

[3] The complaint also alleges two other claims for relief against the Forest Service only, neither of which is at issue here. *See* Doc. 1 at 28-29.

The party invoking the Court's jurisdiction has the burden of establishing it. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).

A successful 12(b)(6) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Godecke v. Kinetic Concepts, Inc*., 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**II.   Discussion.**

**A.   Failure to State a Claim.**

Defendants argue that FWS must be dismissed because the obligation to reinitiate consultation lies exclusively with the Forest Service – the action agency with sole authority to authorize and administer livestock grazing on the allotments. Doc. 10 at 22-23; Doc. 13 at 6. Defendants contend that FWS, as the consulting agency, can be involved in formal consultation only once the Forest Service has reinitiated the consultation process.[4] Doc. 10 at 20; 50 C.F.R. § 402.14(g); *Defs. of Wildlife v. Flowers*, 414 F.3d 1066, 1070 (9th Cir. 2005) (while a consulting agency can request the action agency to enter into a formal consultation, it "lacks the authority to require the initiation of consultation," which is "the [action] agency's responsibility.").

Plaintiffs counter that there is a clear distinction between 50 C.F.R. § 402.14, which allows FWS to request the initial consultation but places the obligation for commencing the process solely on the action agency, and § 402.16, which governs the reinitiation of consultation and imposes a duty on both agencies. Doc. 12 at 11; 402.16(a)(2) (providing that reinitiation of consultation "is required and shall be requested *by the Federal agency*

---

[4] Defendants note that the Court cannot assume, just because FWS has not yet engaged in or completed consultation reinitiated by the Forest Service, that it will not do so in the future. Doc. 10 at 21 (citing *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988)). But the issue here is FWS's independent obligation to reinitiate consultation, not its involvement in consultation reinitiated by the action agency.

- 5 -

*or by the Service*") (emphasis added); *All. for the Wild Rockies v. Probert,* 412 F. Supp. 3d 1188, 1201 (D. Mont. 2019) ("Section 402.14 merely allows the Fish and Wildlife Service to request consultation. Reinitiation under § 402.16, on the other hand, *obligates* either the action agency or Fish and Wildlife Service to act.") (emphasis in original). Plaintiffs also argue that Defendants' position contradicts Ninth Circuit authority, which states that "[t]he duty to reinitiate consultation lies with both the action agency and the consulting agency." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008).

A strong majority of district courts in this Circuit have adopted the Plaintiffs' view, including a judge in this District in a recent case involving the same defendants. *Ctr. for Biological Diversity v. United States Forest Serv.*, No. CV-20-00020-TUC-DCB, 2020 WL 6710944, at *2 (D. Ariz. Nov. 16, 2020) (rejecting Defendants' reinitiation argument because "the law in the Ninth Circuit . . . makes it clear that the ESA establishes a coterminous authority for both the action agency . . . and the consulting agency . . . to reinitiate consultation when one of the triggering events occur under 50 C.F.R. § 402.16(a)."); *see also Wild Fish Conservancy v. United States Envtl. Prot. Agency*, 331 F. Supp. 3d 1210, 1226 (W.D. Wash. 2018) (denying defendants' motion to dismiss because "by its plain language the provision that obligates [the action agency] to reinitiate consultation applies equally to [the consulting agency] . . . this question appears to be amply settled in this Circuit"); *Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F.Supp.3d 1106, 1116–17 (N.D. Cal. 2017) ("[T[he Ninth Circuit has already addressed this precise issue multiple times and confirmed that both the action agency and the consulting agency have a duty to reinitiate consultation."); *Pacificans for a Scenic Coast v. California Dep't of Transportation*, 204 F. Supp. 3d 1075, 1093 (N.D. Cal. 2016) (§ 402.16 "describes [FWS's] obligation in the same terms as the action agency's obligation . . . [c]onsistent with the plain text of the regulation, the Ninth Circuit has stated that [t]he duty to reinitiate consultation lies with both the action agency and the consulting agency.") (internal quotation marks and citations omitted).

Defendants characterize the Ninth Circuit's statement in *Salmon Spawning* as non-binding dicta and argue that: (1) the plain language of § 402.16 makes clear that FWS has no obligation under the ESA to reinitiate consultation; (2) existing Ninth Circuit authority places the duty to reinitiate solely on the action agency, with FWS merely serving an advisory role; and (3) the Court must defer to FWS's interpretative guidance, which supports Defendants' reading of the regulation. Doc. 10 at 14-21.

### 1. Plain Language of the Regulation.

This case can be decided by the regulation's plain meaning. Section § 402.16 provides: "Reinitiation of consultation is required and shall be requested by the Federal agency or by the Service" upon the occurrence of various triggering events. 50 C.F.R. § 402.16(a). Defendants argue that the phrase "by the Federal agency or by the Service" applies only to the words "shall be requested by" and not to the earlier words "Reinitiation of consultation is required." Docs. 10 at 17; 13 at 5-6. In effect, they argue that the regulation should be read this way: "Reinitiation of consultation is required by the Federal agency and by the Service, and shall be requested by the Federal agency." *See id.* But the sentence is not written this way, and nothing in the language suggests that it should be parsed to treat the reinitiation requirement and the request requirement differently. Rather, the sentence identifies two mandatory actions – reinitiation of consultation and a request for reinitiation – and then, without interruption or punctuation, states by of whom the actions must be completed: "by the Federal agency or by the Service." *See* 50 C.F.R. § 402.16(a). "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 134 S. Ct. 1710, 1714 (2014) (citing *Porto Rico Railway*, *Light & Power Co. v. Mor*, 40 S. Ct. 516, 518 (1920)); *see also United States v. Lawrence*, 755 F. App'x 703, 704 (9th Cir. 2019). The plain meaning of the regulation supports Plaintiffs' position. The Court agrees with the majority of cases in this Circuit which have held that the consulting agency has a duty to help reinitiate consultation.

### 2. Role of the Action Agency.

Defendants argue that Ninth Circuit law confirms that an action agency has sole responsibility for reinitiating consultation. Doc. 10 at 14-15. But their cited cases state only what is apparent from the face of the regulation: that the action agency has a duty to reinitiate consultation upon the occurrence of a triggering event. *See, e.g.*, *Or. Nat. Res. Council v. Allen*, 476 F.3d 1031, 1040 (9th Cir. 2007) ("[T]he action agency must reinitiate consultation with the FWS"); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1108 (9th Cir. 2012) (pursuant to 50 C.F.R. § 402.16, "the action agency must . . . reinitiate consultation."). They do not suggest, as Defendants claim, that the action agency bears sole responsibility for reinitiation. Doc. 10 at 14.

### 3. Judicial Deference.

Defendants argue that FWS's interpretative guidance of § 402.16 supports their view and must be afforded deference by the Court. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019) (deference to agencies' reasonable readings of genuinely ambiguous regulations "retains an important role in construing agency regulations."). FWS guidance states that § 402.16:

> does not impose an affirmative obligation on [FWS] to reinitiate consultation if any of the criteria have been met. Rather, the reference here has always been interpreted by the Services to allow us to recommend reinitiation of consultation to the relevant Federal action agency if we have information that indicates reinitiation is warranted. It is ultimately the responsibility of the Federal action agency to reinitiate consultation with the relevant Service when warranted. The same holds true for initiation of consultation in the first instance. While the Services may recommend consultation, it is the Federal agency that must request initiation of consultation.

Doc. 10 at 16 (quoting 84 Fed. Reg. at 44,980 (Aug. 27, 2019)).

The Supreme Court has stated that courts must defer to agency interpretations only when "the regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415. To determine if the regulation comes within this "zone of ambiguity," courts must employ "all . . . interpretive tools" at their disposal, including considering "the text, structure, history, and

purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* As discussed above, the plain meaning of the regulation does not support Defendants' interpretation. Nor does the purpose of the regulatory scheme:

> The purpose of reinitiating formal consultation is not simply to check off a procedural box, but to complete a formal consultation process that ensures to the extent possible that there are no substantive violations of the ESA. Both [the action agency] and [the consulting agency] have a clear obligation to participate in and complete this reinitiation process[.]

*Hoopa Valley Tribe*, 230 F. Supp. 3d at 1117.

The Court cannot conclude that § 402.16 is ambiguous, and thus will not defer to FWS's interpretation. The plain language of the regulation imposes an obligation on both the action and consulting agencies to reinitiate consultation upon the occurrence of triggering events, several of which are identified in the complaint. *See* Doc. 1 ¶ 56.

### B.     Sovereign Immunity.

Defendants argue that Plaintiffs have failed to establish any waiver of sovereign immunity, thus divesting the Court of subject matter jurisdiction. Defendants do not dispute that Section 702 of the Administrative Procedure Act waives sovereign immunity. *See* 5 U.S.C. § 702. Instead, they argue that Plaintiffs lack standing under § 702 because they cannot show that FWS violated a legal duty. Doc. 10 at 22. Because the Court has rejected this argument above, Defendants' subject matter jurisdiction argument fails.

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 10) is **denied.**

Dated this 22nd day of February, 2021.

*David G. Campbell*
David G. Campbell
Senior United States District Judge